UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICE F. SLEET,

        Plaintiff,

v.                                          Case No. 1:04-CV-231
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                          /

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

        Plaintiff was born on March 23, 1962 and completed two years of college (AR 63, 98). She stated that she became disabled on July 12, 2000 (AR 63). She had previous employment as a restaurant manager, factory worker, warehouse worker, accounting clerk, office manager, income tax auditor, delivery service worker and administrative secretary (AR 115). Plaintiff identified her disabling condition as chronic back pain, which limits her ability to sit, stand, move, lift and bend (AR 106). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

September 12, 2003 (AR 20-30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the

evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 29). Second, the ALJ found that she suffered from severe impairments of degenerative disc disease of the lumbar spine, obesity, and adjustment disorder with depressed mood (AR 29). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> for light physical exertion with simple, routine tasks and no frequent or sustained interaction with co-workers and the general public. The claimant has moderately limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. The undersigned also finds that the claimant has moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration.

(AR 29). The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 29). The ALJ further concluded that plaintiff's statements regarding her impairment and its impact on her ability to work were not entirely credible (AR 27).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 30).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following sedentary jobs in Michigan: assembler (8,000); visual inspector (2,000); and packager (1,200).  In addition, plaintiff could perform the following light jobs in Michigan: cleaner (7,000); assembler (10,000); inspector (5,000) and packager (7,000) (AR 30).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 30).

### III.  ANALYSIS

Plaintiff raises two issues on appeal.

**A.    The ALJ erred in failing to consider and evaluate the entire medical record, specifically medical records of Brian P. Giersch, M.D., Keith Javery, D.O., Jaimee Lippert, D.O. and the mental assessment of D. Gritter, A.S.W., A.C.S.W.**

Plaintiff contends that the ALJ did not give full consideration to the statements of her treating physicians, Drs. Giersch, Javery and Lippert, or to her counselor, D. Gritter.  Plaintiff's Brief at 15.  After reviewing the medical record, the ALJ concluded that "[n]one of [plaintiff's] treating and/or examining physicians have indicated that [plaintiff] is totally disabled for all work activity" and that her restrictions were self-imposed "and not on the advice of her treating sources" (AR 27).  The ALJ noted that plaintiff had not required any hospitalization or frequent emergency room treatment, that an EMG report in October 2000 was only mildly abnormal, and that an EMG of lumbar spine in February 2001 revealed degenerative annular disc changes without disc herniation or definable spinal canal stenosis (AR 27).

5

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2) (1997). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 1. Dr. Giersch

The ALJ reviewed and considered Dr. Giersch's report at length (AR 23-24). As an initial matter, Dr. Giersch was not a treating physician, but performed an independent medical examination of plaintiff on April 30, 2001 (AR 184-90). Because Dr. Giersch was an examining

physician, rather than a treating physician, the ALJ was not required to give his opinion controlling weight.[2] Dr. Giersch concluded that plaintiff presented the following conditions: low back pain (consisting of degenerative disc disease, history of mild L4 radiculopathy and myofascial pain), possible greater trochanteric bursitis with referred symptoms down the right lower extremity, morbid obesity, probably depressed mood, sleep disturbance and sedentary lifestyle (AR 188). Dr. Giersch opined that plaintiff had not reached her maximal medical improvement at that point and could return to full time work with restrictions (AR 190). Dr. Giersch agreed with the functional capacity evaluation completed by a physical therapist, Piotr Mietusiewicz, that plaintiff was functioning "in the sub sedentary category of work" to which the doctor would add "the option to sit or stand every hour as needed" (AR 186, 190). Dr. Giersch cautioned, however, that the results of Mr. Mietusiewicz's evaluation were inconclusive, included invalid results of multiple tests and should not be used to determine plaintiff's work ability (AR 186).[3] Dr. Giersch also found that plaintiff

---

[2] A "treating source" is defined in the regulations as:

your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. § 404.1502. On the other hand, a "nontreating source" is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *Id.* Based upon the definitions in the regulations, Dr. Giersch is considered to be a nontreating physician.

[3] The ALJ noted that Mr. Mietusiewicz's evaluation was not made part of the administrative record (AR 24).

exhibited evidence of symptom magnification on examination and pointed out that plaintiff is "quite obese, making an accurate assessment and examination very difficult" (AR 190).

Given Dr. Giersch's disclaimers, including his reliance on the "inconclusive" nature of Mr. Mietusiewicz's evaluation, the ALJ was not bound to accept all of the doctor's conclusions regarding the severity of plaintiff's impairments.

### 2. Dr. Javery

The ALJ also considered plaintiff's treatment by Dr. Javery, a physician at a regional pain management center (AR 24-25). On July 31, 2002, Dr. Javery concluded that plaintiff had some pain in her lower back, "most likely emanating from soft tissue structures as well as possibly disc structures" (AR 198-200). The doctor observed that plaintiff's MRI performed in February 2001 showed central disc anular bulges at L5-S1 "with the possibility of a subligamentous anular tear, but no evidence of disc extruded fragment or herniation," with the other discs being normal (AR 198). She was scheduled for a series of epidural injections, which were administered in September, October and November 2002 (AR 199). Plaintiff noted some relief from the initial injection and had "very good relief" by December, reporting that the second injection "gave her excellent reduction in her pain for the past few weeks" (AR 292). After reviewing the treatment record, the ALJ concluded that by December 2002 plaintiff reported an "excellent reduction in pain" (AR 25). Dr. Javery's records indicate a successful round of pain treatment, which supports the ALJ's conclusion that plaintiff was not disabled.

### 3. Dr. Lippert

Dr. Lippert, plaintiff's treating physician, reported that plaintiff fell in August 2000 and had complained of low back pain since that date (AR 308). In March 2002, Dr. Lippert reported

that plaintiff's neurologic examinations were within normal limits, but that musculoskeletal and osteopathic examinations revealed severe restrictions in her ability to ambulate without pain and a decreased range of motion in the thoracic and lumbar spine and sacral area (AR 309). Plaintiff reported that she had difficulty with activities of daily living caused by debilitating back pain on 3 to 4 days a week (AR 309). The doctor observed that plaintiff may have given "suboptimal effort" in her functional capacity evaluation with Mr. Mietusiewicz and during her independent medical examination by Dr. Giersch, and encouraged Plaintiff to consider re-testing "putting forth full effort" (AR 309). The doctor also offered the opinion that "it would be difficult for her to return to a full-time job as she has difficulty just sitting on an exam table for me" (AR 309).

The ALJ did not explicitly reject or adopt Dr. Lippert's report (AR 25). Upon review of the record, the court concludes that the ALJ was not bound to accept Dr. Lippert's conclusion that it would be difficult for plaintiff to return to full time employment. First, although Dr. Lippert was a treating physician, the ALJ was not bound by the doctor's suggestion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Second, Dr. Lippert's remark is inconsistent with his own records, which set forth no restrictions on plaintiff's work (AR 203, 298, 295-96).

Dr. Lippert questioned the sincerity of plaintiff's effort given in her functional capacity evaluation testing and felt that plaintiff could benefit from increased activity (AR 309). Nevertheless, plaintiff resisted the doctor's encouragement to engage in limited activity, such as walking 20 feet at least four times a week (AR 298). Plaintiff's failure to follow prescribed treatment detracts from her credibility. *See generally, Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (finding that claimant's failure to lose weight and stop smoking was not consistent with the lifestyle of a person suffering from intractable pain); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). Finally, plaintiff's report that she suffers from debilitating back pain three to four days per week is not based upon any clinical testing. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young*, 925 F.2d at 151.

Based on this record, the court concludes that Dr. Lippert's report and opinions do not establish greater limitations than those identified by the ALJ.

    **4.**    **D. Gritter**

Finally, the ALJ reviewed the April 24, 2003 assessment performed by plaintiff's counselor, D. Gritter (AR 25). The counselor concluded that plaintiff's mental problems severely limited her ability to perform work-related activities (AR 290-91). For example, plaintiff had no ability to deal with the public, deal with work stress, or understand complex or detailed work instructions (AR 290-91). Plaintiff had only a poor ability to relate to co-workers, interact with supervisors, maintain attention/concentration, understand simple job instructions, behave in an emotionally stable manner or relate predictably in social situations (AR 290-91). D. Gritter

concluded that plaintiff "could not meaningfully participate in the work-force, or even get herself routinely to a job" (AR 290).

The ALJ gave little weight to this medical assessment because it was not completed by an accepted medical source, 20 C.F.R. § 404.1513; 416.913 (AR 25). The ALJ could properly discount the opinions expressed by D. Gritter. While plaintiff's counselor's opinion can be considered as evidence from a non-medical source, it is not entitled the weight given to the opinions of doctors. *See* 20 C.F.R. §§ 404.1513(e)(4), 416.913(e) (evidence from "other" non-medical sources includes information from therapists); *Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

For the reasons stated above, the court concludes that the ALJ properly considered and evaluated the medical record. In determining plaintiff's residual functional capacity, the ALJ agreed with the assessment of the state agency physician, who concluded that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday (AR 26, 282-89). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

> **B.     The ALJ erred in finding that the objective medical evidence did not support plaintiff's limitations in her ability to work.**

Next, plaintiff contends that the ALJ committed error when he did not consider the "intensity, persistent and limiting effects of her pain." Plaintiff's Brief at 17. Here, the ALJ concluded that plaintiff's statements regarding her impairment and its impact on her ability to work were not entirely credible in light of plaintiff's "own description of her activities and life style, the degree of medical treatment required, discrepancies between [plaintiff's] assertions and information contained in the documentary reports, [plaintiff's] demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and [plaintiff's] assertions regarding her ability to work" (AR 27).

The gist of plaintiff's claim is that the ALJ did not properly evaluate her claim of disabling pain. An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen*, 964 F.2d

12

at 529, *quoting* 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

### First prong of the *Duncan* test

The ALJ found that plaintiff suffered from severe impairments of degenerative disc disease of the lumbar spine, obesity, and adjustment disorder with depressed mood (AR 29). Plaintiff has presented objective evidence of an underlying medical condition. Accordingly, she has satisfied the first prong of the *Duncan* test.

### Second prong of the *Duncan* test

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of her pain. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire*, 1999 WL 196508 at * 7,

13

*citing Young*, 925 F.2d at 151. Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. Plaintiff has failed to demonstrate these reliable indicators of intense pain, other than some reduced range of motion. The record indicates that plaintiff's range of motion improved with physical therapy.[4]

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that plaintiff's testimony "that she lies in bed, reads, watches television occasionally and that she spends all day in bed about 10-15 days a month" (AR 21). The ALJ, however, found that plaintiff's testimony regarding her limitations was not credible. "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). When discrepancies exist between the claimant's testimony and the written record, the reviewing court does not substitute its credibility findings for that of the ALJ. *See Bentley*, 2001 WL 1450803 at *1; *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

In the present case, discrepancies exist between plaintiff's testimony and the other evidence in the record. While plaintiff's testimony suggests that she is entirely incapable of performing work-related activities (e.g., she must lie in bed 10 to 15 days a month (AR 349-50)),

---

[4] Plaintiff's physical therapist stated that plaintiff had a reduced range of motion in October 2000 (AR 182). Plaintiff was seen by a physical therapist in October and November 2000, but had several cancellations and "no shows" during that period (AR 195). Plaintiff resumed physical therapy in February 2001 with only moderate restrictions in her range of motion (AR 196). Her physical therapy discharge summary for June 2001 indicates that her short term goals were met and long term goals were partially met (AR 191).

none of her physicians have placed her on work restrictions or this type of bed rest. Dr. Lippert advised plaintiff to engage in activities, which plaintiff resisted (AR 298). Both Drs. Giersch and Lippert questioned plaintiff's efforts used in her functional capacity evaluation (AR 186, 309). In addition, plaintiff reported excellent results obtained from some of her epidural injections (AR 292). Plaintiff's allegations that her intense pain prevents her from performing virtually any work-related activity is unsupported by the medical record in this case. Accordingly, the court has no basis to upset the ALJ's credibility findings.

Finally, plaintiff fails to meet the second part of the second prong of the *Duncan* test because she provides no objective medical evidence indicating that her condition "is of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. Plaintiff had normal spine x-rays in September 2000, a mildly abnormal EMG with evidence of mild L-4 radiculopathy in October 2000, and an essentially normal lumbosacral spine MRI in February 2001 showing only degenerative annular disc changes at the L4-5 level without lateralizing disc herniation or definable spinal canal stenosis (AR 185-86). The medical record does not indicate that plaintiff underwent back surgery. A conservative course of treatment suggests that she does not suffer from a condition expected to give rise to disabling pain. *See, e.g., McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Bryant v. Chater*, No. 96-3426, 1997 WL 160372 at * 4 (6th Cir. April 4, 1997).

In addition, plaintiff had no history of nerve root compression or other indications of a structural deformity in the back. Plaintiff's condition, which included normal degenerative changes in the spine, are not of a severity which can reasonably be expected to give rise to the alleged disabling pain. *See*, *e.g.*, *Williams v. Sullivan*, No. 89-3796, 1990 WL 75233 (6th Cir. June 6. 1990)

15

(second prong of *Duncan* test not satisfied by mild degenerative changes in lumbosacral spine); *McInally v. Bowen*, No. 87-1472, 1988 WL 54085 (6th Cir. May 31, 1988) (mild degenerative changes in spine with no evidence of nerve root irritation is not of such severity as to reasonably produce disabling pain); *Barrow v. Secretary of Health & Human Servs.*, No. 87-6032, 1988 WL 103333 at *4 (6th Cir. Oct. 4, 1988) (degenerative disc changes in thoracic spine with no objective evidence of nerve root irritation or muscle wasting does not satisfy the *Duncan* standard); *Duncan*, 801 F.2d at 853-54 (mild degenerative changes in lumbar and cervical spinal regions are not so severe that they could be reasonably expected to produce disabling pain). In short, there is no objective medical evidence to support plaintiff's claim of disabling pain.

The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

**IV.    Recommendation**

Based upon all the evidence of record, I   respectfully recommend that the Commissioner's decision be affirmed.

Dated:     June 9, 2005                          /s/  Hugh W. Brenneman, Jr.
                                                 Hugh W. Brenneman, Jr.
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).